UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLO VARTINELLI,

        Plaintiff,               CIVIL ACTION NO. 10-10702

        v.                  DISTRICT JUDGE PATRICK J. DUGGAN

GEORGE PRAMSTALLER,       MAGISTRATE JUDGE VIRGINIA M. MORGAN
ZAKIUDDIN A. KHAN, MARY
ELLEN HYNES, and CORRECTIONAL
MEDICAL SERVICES,

        Defendants.
_____/


**REPORT AND RECOMMENDATION TO GRANT**
**DEFENDANTS HYNES AND PRAMSTALLER'S RULE 12(b) PARTIAL MOTION FOR**
**DISMISSAL AND MOTION FOR SUMMARY JUDGMENT ON ANY REMAINING**
**CLAIMS (D/E #52)**

**I. Introduction**

        This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody

of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived

plaintiff of his rights under the United States Constitution through their retaliation and deliberate

indifference to his serious medical needs.  The matter comes before the court on defendants

Hynes and Pramstaller's "Rule 12(b) Partial Motion for Dismissal and Motion for Summary

Judgment on Any Remaining Claims" (D/E #52).  Plaintiff filed a response in opposition to that

motion (D/E #55).  For the reasons stated below, this court recommends that defendants' motion

be **GRANTED**.  Specifically, this court finds that:

> **1.** Plaintiff failed to properly exhaust his administrative remedies with respect to his claims against Pramstaller and Hynes prior to filing this lawsuit.

> **2.** Plaintiff makes no claims under the Michigan State Constitution and, to the extent he makes such a claim, it should be dismissed.

> **3.** The claims against Pramstaller and Hynes in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

> **4.** All of plaintiff's claims against Pramstaller and most, if not all, of plaintiff's claims against Hynes are barred by the applicable statute of limitations.

> **5.** Pramstaller and Hynes are entitled to summary judgment because they were not personally involved in the alleged constitutional violations.

This court would also note that the other defendants in this matter, defendants Khan and

CMS, have filed a motion for summary judgment (D/E #58) as well and that this court is also

entering a report and recommendation finding that those two defendants' motion should be

granted.  If both report and recommendations are accepted, then this case would be closed.

## II. Background

### A. Complaint

On February 19, 2010, plaintiff filed the complaint against defendants in this matter (D/E

#1).  At the time of the alleged events giving rise to this complaint, plaintiff was incarcerated at

the Thumb Correctional Facility (TCF) in Lapeer, Michigan.  (Complaint, ¶ 1).  As displayed on

the docket sheet for this case, plaintiff is currently incarcerated at the Saginaw Correctional

Facility in Saginaw, Michigan.  The four specific counts in plaintiff's complaint are a § 1983

-2-

retaliation claim (Complaint, ¶¶ 21-30), a § 1983 deliberate indifference claim (Complaint, ¶¶ 31-37), a § 1983 supervisory liability claim (Complaint, ¶¶ 38-47), and a gross negligence claim based on state law (Complaint, ¶¶ 48-53). In identifying those counts, plaintiff appears to simply group his claims against all of the defendants together. However, he does make claims against specific defendants in the facts section of his complaint.

With respect to defendant Khan, plaintiff alleges that Khan is a medical doctor employed by CMS and assigned to TCF. (Complaint, ¶ 4) Plaintiff also alleges that, on June 6, 2006, Khan improperly, and against another doctor's instruction, stopped plaintiff's prednisone medication without tapering it off. (Complaint, ¶ 14) According to plaintiff, such action constituted deliberate indifference to plaintiff's serious medical needs and violated plaintiff's constitutional rights. (Complaint ¶¶ 31-37). Plaintiff also alleges that, after he filed a grievance against Khan, Khan retaliated against plaintiff by deliberately and intentionally exposing plaintiff to fish, even though Khan knew that plaintiff has a severe allergy to fish. (Complaint, ¶¶ 15-19)

With respect to defendant Pramstaller, plaintiff alleges that Pramstaller was the Director of the Bureau of Health Services for the MDOC and, consequently, responsible for the policies, practices and customs of the MDOC. (Complaint, ¶ 3) Plaintiff also alleges that he filed a grievance against Pramstaller, Khan and CMS because of Khan's threats of retaliation (Complaint, ¶ 15) and hired an attorney to submit his complaints regarding Khan to Pramstaller. (Complaint, ¶ 16) Plaintiff further alleges that Pramstaller conspired with the other defendants

-3-

(Complaint, ¶ 40) and that, given his position, Pramstaller followed the unconstitutional customs and policies that lead to the inadequate medical treatment (Complaint, ¶¶ 43-45).

With respect to defendant Hynes, plaintiff alleges that Hynes was a nurse at TCF during the relevant time period.  (Complaint, ¶ 5)  According to plaintiff, after he filed a grievance against Pramstaller, Khan and CMS, Hynes voiced her dislike of prisoners filing complaints. (Complaint, ¶ 16)  Plaintiff also alleges that he submitted a written complaint to Hynes regarding Khan exposing plaintiff to fish, but that Hynes ignored the complaint.  (Complaint, ¶ 17) Plaintiff further alleges that, after he filed a grievance against Khan and Hynes in February of 2007, Hynes improperly reviewed  that grievance and continued to do nothing about Khan's actions.  (Complaint, ¶¶ 18-19)  According to plaintiff, Hynes was a supervisor at TCF and, in part, responsible for the customs and policies that lead to the inadequate medical treatment. (Complaint, ¶¶ 38-47)

With respect to defendant CMS, plaintiff first alleges that CMS followed a policy and custom whereby it denied plaintiff treatment for myositis and a hearing aid.  (Complaint, ¶15) Plaintiff also alleges that CMS practiced and permitted policies and customs that resulted in the violations of plaintiff's constitutional rights, failed to train and supervise employees to prevent the alleged constitutional violations, and failed to meet its contractual obligations.  (Complaint, ¶¶ 38-47)

**B. Motion Before The Court**

On October 29, 2010, defendants Hynes and Pramstaller filed a motion for partial dismissal and for summary judgment (D/E #52).  In that motion, those defendants argue that (1)

-4-

plaintiff failed to exhaust his administrative remedies with respect to his claims against them prior to filing this lawsuit as required by the PLRA[1], (2) any state constitutional claim should be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim, (3) Eleventh Amendment immunity precludes any "official capacity" claims, (4) plaintiff's claims arising prior to February 19, 2007 are barred by the applicable statute of limitations, and (5) all claims against Pramstaller and Hynes fail due to a lack of personal involvement.

On November 12, 2010, plaintiff filed a response in opposition to defendants Hynes and Pramstaller's motion (D/E #72). In that response, plaintiff argues that he complied with the PLRA, as that statute is interpreted by the courts, and that he provided all defendants with fair notice of his claims through the MDOC grievance process. Plaintiff also argues that his complaint was filed within the applicable statute of limitations as the limitations period was tolled while plaintiff exhausted his administrative remedies. Plaintiff further argues that Hynes was personally involved in this case as she was the one who rudely responded to plaintiff and plaintiff's wife's attempts to resolve the complaints against Khan. According to plaintiff, Hynes also improperly responded to grievances in which her conduct was being grieved. Plaintiff further claims that Hynes personally approved plaintiff's transfer in retaliation for the grievance and complaints.

---

[1]Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq*.

### III. Standards of Review

#### A. Dismissal

Defendants move for partial dismissal plaintiff's claims pursuant to various provisions of Fed. R. Civ. P. 12(b).  With respect to defendants' argument, made pursuant to 12(b)(1), that the court lacks subject matter jurisdiction to hear this case, the court would note that the parties cannot consent to subject matter jurisdiction where it is lacking and, therefore, "[t]he existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself."  In re Lewis, 398 F.3d 735, 739 (6th Cir. 2005).  The plaintiff, as the party invoking federal subject matter jurisdiction, bears the burden of persuading the court that subject matter jurisdiction exists in the case.  Dismas Charities, Inc. v. U.S. Dep't of Justice, 401 F.3d 666, 671 (6th Cir. 2005).  A facial attack on subject matter jurisdiction challenges the sufficiency of the pleading, and in reviewing such an attack, the court takes the allegations in the complaint as true.  Ohio Nat'l Life Ins. Co., 922 F.2d at 325.  Where the defendant brings a factual attack on subject matter jurisdiction, no presumption of truth applies to the allegations contained in the pleadings, and the court may consider documentary evidence in conducting its review.  Id.

While made pursuant to 12(b)(2) and (b)(6), defendants' other arguments for dismissal should actually be construed as a motion for judgment on the pleading pursuant to Fed. R. Civ. P. 12(c) given that defendants have already filed a responsive pleading to the complaint.  Fed. R. Civ. P. 12(c) provides: "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  A Rule 12(c) motion for judgment on the pleadings is reviewed using the same standards applicable to a motion to dismiss under Rule

12(b)(6).  Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389 (6th Cir.

2007).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material

allegations of the pleadings of the opposing party must be taken as true, and the motion may be

granted only if the moving party is nevertheless clearly entitled to judgment."  Tucker v.

Middleburg-Legacy Place, LLC, 539 F.3d 545, 549 (6th Cir. 2008) (quoting JPMorgan Chase

Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007)).

### B. Summary Judgment

Defendants also move for summary judgment pursuant to Federal Rule of Civil

Procedure 56(a), which states that:

> A party may move for summary judgment, identifying each claim or defense--or
> the part of each claim or defense--on which summary judgment is sought.  The
> court shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter
> of law.  The court should state on the record the reasons for granting or denying
> the motion.

In deciding a motion for summary judgment, the court must view the evidence and draw

all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co.,

Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once

the moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106

S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his

-7-

pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575,

1592 (1968)).

## IV. Discussion

As discussed above, defendants Hynes and Pramstaller argue that (1) plaintiff failed to

exhaust his administrative remedies with respect to his claims against them prior to filing this

lawsuit, (2) any state constitutional claim should be dismissed, (3) Eleventh Amendment

immunity precludes any "official capacity" claims, (4) plaintiff's claims arising prior to February

19, 2007 are barred by the applicable statute of limitations, and (5) all claims against Pramstaller

and Hynes fail due to a lack of personal involvement.  This court will address each of those

arguments in turn and, for the reasons discussed below, finds that defendants' motion should be

granted.

### A. Exhaustion of Administrative Remedies

Defendants first argue that plaintiff's claims against them should be dismissed because he

failed to exhaust his administrative remedies prior to filing this lawsuit.  In response, plaintiff

argues that met the exhaustion requirement by providing all defendants with fair notice of his

claims through the MDOC grievance process.

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq*., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, 549 U.S. 199, 202-204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

In this case, the administrative procedure applicable to the plaintiff's claims are set forth in MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances."  (MDOC PD 03.02.130; attached as Exhibits 2A and 3 to D/E #52)  Pursuant to that policy directive, the MDOC grievance process consists of three steps.  First, an inmate must file a Step I grievance setting forth the issue being grieved and identifying the persons involved in the issue after an unsuccessful attempt at a verbal resolution.  If the inmate is dissatisfied with the Step I response to his grievance, he may file a Step II appeal; which is followed by a Step III grievance appeal in

the event he is dissatisfied with the Step II grievance response.  (MDOC PD 03.02.130, ¶¶ X, DD, HH; attached as Exhibits 2A and 3 to D/E #52)

All grievances pursued through all three steps of the MDOC grievance process are recorded are logged in a computerized grievance tracking system.  (MDOC PD 03.02.130, ¶ II; attached as Exhibits 2A and 3 to D/E #52)  However, nothing from the grievance tracking system was provided in this case.  However, the parties appear to agree that the two grievances attached as exhibits to plaintiff's complaint are the only two relevant grievances in this case.

In Grievance TCF 06-07-0464-12D[2], plaintiff alleges that, on June 27, 2006, his prednisone medication was stopped, without being tapered down, on the order of Khan.  Plaintiff also alleges that Khan's actions constituted deliberate indifference to his serious medical needs and that Khan's actions were motivated by financial concerns.  Plaintiff further stated that "Dr. George Pramstaller should take notice of this grievance, investigate it and prevent Dr. Khan's illegal conduct."

In the Step I response, Registered Nurse Susan Dougovito stated that, while an investigation confirmed that Khan had discontinued plaintiff's prednisone, nothing wrong had been done:

> Based on the above finding we discussed the issue tht [sic] physicians practice
> independetly [sic] and that prednisone is not a medication that should be taken
> forever if not medically indicated.  At this time, he is pleased to be off the
> medication and plans to lose some weight in order to improve his health.  This
> matter is being reviewed for quality assurance purposes.  Based upon that review

---

[2]The initial grievance, responses, and appeals for Grievance TCF 06-07-0464-12D are attached as Exhibit 1 to the Complaint.

and any action deemed necessary will be taken and this grievance will be
considered resolved.

Dougovito's response was reviewed and approved by defendant Hynes.

Plaintiff appealed the grievance to Step II, arguing that the response was factually

presumptuous and in accurate.  Plaintiff also argued that, while he had been previously instructed

that prednisone should be tapered off due to potential health risks, Khan ignored all of those

risks.  Plaintiff further asserted that Khan had threatened to retaliate against plaintiff by having

him transferred.  Moreover, plaintiff asserted that Hynes had been highly vocal in expressing her

anger over being contacted by Lansing with respect to plaintiff's medical problems. According

to plaintiff, Hynes voiced that anger to plaintiff while also ignoring his grievance.

In the Step II response, Nursing Supervisor Angela Union found that plaintiff's medical

condition and health were being closely monitored and that the evidence did not support

plaintiff's charge of deliberate indifference by Khan.  Union also noted: "Grievant disagreement

with the clinical conclusion of his MSP regarding the type of care he needs does not support a

denial of care."

Plaintiff appealed grievance TCF-06-07-0464-12D to Step III.  In that appeal, plaintiff

argued that the some issues raised in his grievance such as Khan's threats of retaliation and

Hynes' comments, had not been addressed.  Plaintiff also reiterated his grievance regarding the

discontinuation of prednisone while also identifying other deficiencies in Khan's treatment of

him.

Plaintiff's grievance was subsequently denied at Step III on the basis that:

Grievant was evaluated by his MSP and the medication was found to be not medically indicated at that time.  The MSP is the medical authority and grievant's disagreement with medical judgment of that MSP does not support his claim of denial of medication or interference of grievant's treatment plan.

Grievant has been receiving and continues to receive all care medically indicated to meet his needs.  Grievance appeal denied.

That Step III response for Grievance TCF 06-07-0464-12D was approved by the warden at TCF on April 19, 2007.

In Grievance TCF 07-02-0144-12D[3], plaintiff stated at Step I that, while he had made a good-faith effort to work with Khan, Khan deliberately and intentionally exposed plaintiff to fish, despite knowing that plaintiff has a severe allergy to fish, in retaliation for plaintiff's complaints against Khan.  Plaintiff also stated that, on February 22, 2007, he wrote a memorandum to Hynes regarding Khan's conduct and Khan's continuous deliberate indifference to plaintiff's serious medical needs.  According to plaintiff, Hynes did nothing.

Grievance TCF 07-02-0144-12D was responded to at Step I by RN Dougovito and the response was reviewed by defendant Hynes.  In that response, Dougovito noted that Khan no longer worked for the MDOC, but she was able to talk with plaintiff regarding plaintiff's frustration with his health care and plaintiff's fish allergy.  In conclusion, Dougovito wrote:

A meals-in deals has been issued or six months … It is Mr. Vartinelli's responsibility to get that renewed as needed.  It is Mr. Vartinelli's responsibility to have his officer cancel appointments on days when [he] feels he shouldn't be in

---

[3]The initial grievance, responses, and appeals for Grievance TCF 07-02-0144-12D are attached as Exhibit 4 to the Complaint.

the yard because of fish smells.  Another health care appontment [sic] will be
scheduled to discuss his other concerns on 4-4-07.  This grievance is resolved.

Plaintiff appealed the grievance to Step II, arguing that, while Dougovito had been

helpful, Khan had subjected him to retaliation and cruel and unusual punishment.  Plaintiff also

argued that Hynes' actions were equally troubling given her comments and inaction.  Plaintiff

further argued that, given those actions, his constitutional rights had been violated.  Plaintiff then

noted that:

> CMS's Chief Medical Officer, George Pramstaller, is fully aware about the
> substance of my complaint and the issues involved therein.  Yet, he never
> investigated nor has ever addressed any of the issues brought up to him by my
> attorney, and my "Patient Advocate."  Including the threat of being transferred
> out to a facility I will not like.  Dr. Pramstaller [sic] aloofness is troubling, and it
> only fosters abuse of power.

In the Step II response, RN Charles Mangus concluded that, while the evidence reveals

that plaintiff does have an allergy to fish, the evidence also shows that he is being

accommodated for his allergy.  Accordingly, the Step II appeal was denied.

Plaintiff appealed Grievance TCF 07-02-0144-12D to Step III.  In that Step III appeal,

plaintiff summarized his allegations of Khan's deliberately indifference medical care.  Plaintiff

did not limit his appeal to concerns regarding his fish allergy and, instead, discussed a number of

other medical concerns, including the denial of a hearing aid.  As relief, plaintiff sought a full

review of his medical file and proper treatment.

-13-

The response to plaintiff's Step III appeal noted that plaintiff had added other medical issues to his claim that Khan intentionally had plaintiff sent to health care when fish was being cooked despite knowing that plaintiff has a severe allergy to fish. The response also stated:

> The information presented upon appeal to step III has been reviewed in addition to the medical record. The step I and step II responses appropriately address the grievance. Grievant has been examined by a different MSP as the one he makes allegations against is no longer working for prison system. Medical needs are being addresses [sic]. The step I respondent arranged for a special detail regarding the menu to accommodate his fish allergy. Allegation of retaliatory behavior are not substantiated.

Given that history for the only two relevant grievances appealed through Step III, plaintiff has failed to properly exhaust his administrative remedies as to his claims against Pramstaller and Hynes prior to filing this lawsuit and those claims should be dismissed. With respect to Pramstaller, while plaintiff requested his help in one grievance and noted that he was aware of the problem being grieved in another, plaintiff clearly never filed a grievance against Pramstaller.

With respect to Hynes, on the other hand, plaintiff did bring complaints against her in each of his two grievances. However, plaintiff did not properly exhaust his complaints against Hynes in either. For example, in Grievance TCF 06-07-0464-12D, plaintiff only named Khan as the person being grieved at Step I and plaintiff did not bring up a complaint against Hynes until his Step II appeal, after Hynes had reviewed the Step I denial. It is procedurally improper under the MDOC grievance process to raise a new claim in an appeal and the MDOC never addressed plaintiff's complaint against Hynes at Step II or Step III. Plaintiff was required to file a new grievance against Hynes. In Grievance TCF 07-02-0144-12D, plaintiff did name both Khan and

-14-

Hynes at Step I and Step II.  However, plaintiff limited the complaints in his Step III appeal to his grievance against Khan.  A prisoner must pursue a grievance against a defendant through all three steps of the MDOC grievance process in order to properly exhaust his administrative remedies, and plaintiff failed to do so against Hynes in this case.

The United States Supreme Court expressly held in <u>Woodford</u> that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Woodford</u>, 126 S.Ct. at 2386.  In this case, with respect to defendants Pramstaller and Hynes, plaintiff failed to comply with the applicable grievance procedures because he failed to pursue any grievances against those two defendants through all three steps of the MDOC grievance process.  Moreover, the MDOC followed its own procedural rules in responding to the grievances in this case and it did not excuse plaintiff's filing problems by deciding the procedurally improper complaints on their merits.  The Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." <u>Jones</u>, 127 S.Ct. at 923.  Here, those benefits have not been met and plaintiff's claims against Pramstaller and Hynes should be dismissed pursuant to 42 U.S.C. § 1997e(a).

**B. State Constitutional Claims**

-15-

Defendants also argue that any claims made by plaintiff under the Michigan State Constitution should be dismissed. Plaintiff did not address defendants' argument in his response.

Plaintiff only makes brief mention of the Michigan State Constitution in his complaint (Complaint, ¶ 10) and it is not clear that plaintiff makes any claim under it. Plaintiff fails to discuss any such claim in his response to defendants' motion. Given that lack of argument, as well as the absence of any specific allegations in the complaint, this court finds that plaintiff does not have any state constitutional claims.

To the extent plaintiff does make state constitutional claims, those claims should be dismissed. As found by the Michigan Supreme Court, there is no inferred damages remedy against individual government employees for violation of a state constitutional right, Jones v. Powell, 462 Mich. 329, 612 N.W.2d 423 (2000), and there is no general statute for a damage remedy for violations of the Michigan Constitution. Under certain narrow circumstances such a remedy may be inferred, see, *e.g.*, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Smith v. Dep't of Public Health, 428 Mich. 540, 410 N.W.2d 749 (1987), but those circumstances are very rare and no remedy for violation of the state constitution will be inferred if there is any other remedy available, see Jones, 462 Mich. at 336. Here, plaintiff can seek relief pursuant to 42 U.S.C. § 1983 and, consequently, he cannot bring a state constitutional claim. Jones, 462 Mich. at 336; Smith v. Michigan, 256 F.Supp.2d 704, 706-707 (E.D. Mich. 2003) (Roberts, J.)

-16-

**C. Eleventh Amendment Immunity**

As argued by defendants, the claims against them in their official capacities are barred by

the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another state, or by Citizens or subjects of any foreign State.

U.S. Const. amend. XI.  Courts have construed that language broadly and the Eleventh

Amendment generally bars suits in federal court against a state and its departments or agencies

unless the state has waived its sovereign immunity or unequivocally consented to be sued.  See

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67

(1984); Skinner v. Govorchin, 463 F.3d 518, 524 (6th Cir. 2006).[4]  "Whether a suit against State

officials in their official capacity is deemed to be against the State depends on whether the

plaintiff seeks 'retroactive' or 'prospective' relief'."  Doe, 21 F.3d at 736.  Retroactive relief

compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually

takes the form of money damages, that is not necessarily the case.  See Cory v. White, 457 U.S.

---

[4]As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir.
2005), a State's immunity comes with exceptions; the immunity does not attach if the lawsuit is
not against the State or an arm of the State, the immunity does not extend to counties and similar
municipal corporations, the immunity does not apply if the lawsuit is filed against a state official
for purely injunctive relief enjoining the official from violating federal law, the immunity may be
abrogated by Congress when exercising its enforcement authority under the Fourteenth
Amendment, and the immunity does not apply when the Federal Government brings the lawsuit.
Additionally, a State may elect to waive that immunity through legislation through its conduct in
litigation.  Ernst, 427 F.3d at 358.  None of these exceptions are applicable in this case.

-17-

85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737.  Where an official

capacity claim is for retroactive relief, the action is deemed to be against the State whose officers

are the nominal defendants.  Doe, 21 F.3d at 737.

        In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore,

the suit is deemed to be against Michigan itself.  Doe, 21 F.3d at 737.  The State of Michigan,

however, has not consented to civil rights suits in federal court.  See Johnson v. Dellatifa, 357

F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also

Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003).  Therefore, to the extent plaintiff's

claims against defendants are against them in their official capacities, the claims are barred by

the Eleventh Amendment.

### D. Statute of Limitations

        Defendants argue that plaintiff's claims against them are barred by the applicable statute

of limitations.  Section 1983 does not contain its own statute of limitations, courts must look to

state law to determine the relevant limitations period.  Roberson v. Tennessee, 399 F.3d 792, 794

(6th Cir. 2005).  The Sixth Circuit has held that "the appropriate statute of limitations to be

borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for

personal injury claims."  Wolfe v. Perry, 412 F.3d 707, 713-714 (6th Cir. 2005) (citing Mich.

Comp. Laws Ann. § 600.5805(10); Carroll v. Wilkerson, 782 F.2d 44, 44 (6th Cir. 1986).

        In determining when the limitations period began, courts must refer to federal law.

Roberson, 399 F.3d at 794.  The Sixth Circuit has held that, under federal law, the statute of

limitations begins to run "'when the plaintiff knows or has reason to know of the injury which is

the basis of [her] action.  A plaintiff has reason to know of [her] injury when [she] should have discovered it through the exercise of reasonable diligence.'"  Roberson, 399 F.3d at 794 (quoting, Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984).  Pursuant to Fed. R. Civ. P. 6(a)(1)(A), the court must "exclude the day of the event that triggers the period" when calculating the statute of limitations.

The Sixth Circuit has also clearly held that the statute of limitations applicable to a prisoner-initiated § 1983 suit is tolled while the plaintiff exhausts available state remedies.  See Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000); Waters v. Evans, 105 Fed. Appx. 827, 829 (6th Cir. 2004).  The statute of limitations is tolled because a prisoner cannot bring suit in federal court until after exhaustion of the administrative remedies at the facility (the standard MDOC grievance procedure), and it would be unfair to penalize such prisoners for not bringing their claims during the limitations period, while administrative proceedings were still ongoing.  See Brown, 209 F.3d at 596.[5]  Thus, the statute of limitations begins to run once the plaintiff becomes aware of the injury, but is tolled while the prisoner seeks redress through administrative proceedings at the prison.

As a preliminary matter, this court would note that plaintiff argues that he properly exhausted his administrative remedies  prior to filing this lawsuit and, therefore, the statute of limitations for those claims was tolled while the grievance process was completed.  If plaintiff is

_____

[5]The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999).

-19-

correct that his grievances encompassed his claims against those defendants, then his claims against them would be well within the applicable statute of limitations.  As discussed above, however, this court finds that plaintiff failed to properly exhaust his administrative remedies as to his claims against Hynes and Pramstaller.

Plaintiff filed his complaint on February 19, 2010 and, given the absence of any tolling, any claims that arose prior to February 19, 2007 are barred by the three year statute of limitations applicable to 42 U.S.C 1983 actions.  While it is difficult to determine the exact date plaintiff's claims against Pramstaller and Hynes arose, it appears that all of plaintiff's claims against those two defendants are barred by the three-year statute of limitations.

As discussed above, plaintiff generally alleges that Pramstaller, as Director of the Bureau of Health Services for the MDOC, was responsible for plaintiff's medical care and that plaintiff both filed a grievance against Pramstaller and hired an attorney to submit complaints to Pramstaller due to inadequate medical care.  (Complaint, ¶¶ 3, 15-16)  However, the grievance that first mentioned Pramstaller (Grievance TCF 06-07-0464-12D; attached as Exhibit 1 to the Complaint) and the letter the attorney sent to Pramstaller (Letter, attached as Exhibit 2 to the Complaint) were both sent in 2006.  Consequently, plaintiff's claims against Pramstaller clearly arose prior to February 19, 2007 and are therefore barred by the statue of limitations.

Likewise, most of plaintiff claims against Hynes are also barred.  Plaintiff specifically alleges that Hynes voiced a dislike of prisoners making complaints while responding to a grievance and that she ignored a written complaint regarding Khan exposing plaintiff to fish. (Complaint,   16-17).  However, based on the evidence attached to plaintiff's complaint, both of

-20-

those actions occurred in 2006. (Grievance TCF 06-07-0464 12D, Step II Appeal, attached as Exhibit 1 to Complaint; Letter, attached as Exhibit 3 to Complaint) Accordingly, those claims are barred by the statute of limitations. Plaintiff does allege that, after he filed a grievance against Hynes and Khan on February 27, 2007, Hynes improperly reviewed the grievance and continued to do nothing about Khan's actions. (Complaint, ¶¶ 18-19) To the extent that allegation states a separate claim pursuant to § 1983, it would be within the statue of limitations. However, even if that was the case, plaintiff's claim should still be dismissed for the reasons discussed elsewhere in this report and recommendation.

### E. Personal Involvement

Defendants Hynes and Pramstaller also argue that they are entitled to summary judgment as to the claims against them because they were not personally involved in the alleged constitutional violations. To succeed in under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983. See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Shehee v. Luttrell, 199 F.3d 295, 300 (6th

Cir. 1999) (citations omitted).  Moreover, the Sixth Circuit held in <u>Shehee</u> that a denial of an

administrative grievance and the failure to remedy the alleged constitutional violation did not

constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  <u>Shehee</u>, 199 F.3d

at 300.

      In this case, it is clear that plaintiff's claims against Pramstaller arise from Pramstaller's

failure to respond to plaintiff's complaints.  In this case, plaintiff hired an attorney to send a

letter detailing plaintiff's complaints regarding Khan (Letter, dated November 18, 2006; attached

as Exhibit 2 to the Complaint) and specifically requested in a grievance that Pramstaller

investigate and resolve plaintiff's problems with Khan (Grievance TCF 06-07-0464-12D;

attached as Exhibit 1 to Complaint).  However, even if Pramstaller failed to respond to those

complaints, a respondeat superior theory of liability is not cognizable under 42 U.S.C. § 1983

and, at a minimum, plaintiff must show that the official at least implicitly authorized, approved,

or knowingly acquiesced in Khan's alleged unconstitutional conduct.  <u>Shehee</u>, 199 F.3d 295 at

300.  Plaintiff presents no evidence of any sufficient personal involvement by Pramstaller in this

case.  Given that lack of evidence, there is no genuine dispute in this case regarding

Pramstaller's involvement in the alleged constitutional violation and he is entitled to summary

judgment.

      Similarly, plaintiff's claims against Hynes also arise from her alleged inaction following

a complaint regarding Khan or her alleged failure to properly respond to a grievance.  Moreover,

Hynes' affidavit confirms that she never personally provided health care to plaintiff and that she

did not supervise Khan.  (Affidavit of Mary Ellen Hynes, ¶¶ 1-6; attached as Exhibit 2 to the

Complaint)  As discussed above, a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.  Thus, plaintiff's unsupported claims relying on that basis are insufficient and Hynes should be granted summary judgment.[6]

**V. Conclusion**

For the reasons discussed above, this court recommends that defendants Hynes and Pramstaller's motion for partial dismissal and for summary judgment (D/E #52) be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

---

[6]Plaintiff does argue in his response and in a grievance he previously filed that Hynes retaliated against him by having plaintiff transferred.  However, no such claim was made in his complaint and, even if plaintiff did make such a claim, he fails to provide any evidentiary support for it.

-23-

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


                              S/Virginia M. Morgan
                              Virginia M. Morgan
                              United States Magistrate Judge


Dated: March 18, 2011

---

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and Carlo
Vartinelli via the Court's ECF System and/or U. S. Mail on March 18, 2011.

                              s/J. Johnson
                              Case Manager to
                              Magistrate Judge Virginia M. Morgan