UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLO VARTINELLI,

        Plaintiff,                CIVIL ACTION NO. 10-10702

       v.                    DISTRICT JUDGE PATRICK J. DUGGAN

GEORGE PRAMSTALLER,       MAGISTRATE JUDGE VIRGINIA M. MORGAN
ZAKIUDDIN A. KHAN, MARY
ELLEN HYNES, and CORRECTIONAL
MEDICAL SERVICES,

        Defendants.
_____/


**REPORT AND RECOMMENDATION TO GRANT**
**DEFENDANTS CMS AND KHAN'S MOTION FOR SUMMARY JUDGMENT (D/E #58)**


**I. Introduction**

       This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody

of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived

plaintiff of his rights under the United States Constitution through their retaliation and deliberate

indifference to his serious medical needs.  The matter comes before the court on defendants

Correctional Medical Services (CMS) and Khan's Motion for Summary Judgment (D/E #58).

Plaintiff filed a response in opposition to those motions (D/E #72) and defendants filed a reply to

that response (D/E #78).  For the reasons stated below, this court recommends that defendants

CMS and Khan's motion for summary judgment (D/E #58) be **GRANTED**.  This court would

-1-

also note that the other defendants in this matter, defendants Pramstaller and Hynes, have filed a

motion for summary judgment (D/E #52) as well and that this court is also entering a report and

recommendation finding that those two defendants' motion should be granted.  If both report and

recommendations are accepted, then this case would be closed.

## II. Background

### A. Complaint

On February 19, 2010, plaintiff filed the complaint against defendants in this matter (D/E

#1).   At the time of the alleged events giving rise to this complaint, plaintiff was incarcerated at

the Thumb Correctional Facility (TCF) in Lapeer, Michigan.  (Complaint, ¶ 1).  As displayed on

the docket sheet for this case, plaintiff is currently incarcerated at the Saginaw Correctional

Facility in Saginaw, Michigan.

With respect to defendant Khan, plaintiff alleges that Khan is a medical doctor employed

by CMS and assigned to TCF.  (Complaint, ¶ 4)  Plaintiff also alleges that, on June 6, 2006,

Khan improperly, and against another doctor's instruction, stopped plaintiff's prednisone

medication without tapering it off.  (Complaint, ¶ 14)  According to plaintiff, such action

constituted deliberate indifference to plaintiff's serious medical needs and violated plaintiff's

constitutional rights.  (Complaint ¶¶ 31-37).  Plaintiff also alleges that, after he filed a grievance

against Khan, Khan retaliated against plaintiff by deliberately and intentionally exposing

plaintiff to fish, even though Khan knew that plaintiff has a severe allergy to fish.  (Complaint,

¶¶ 15-19)

With respect to defendant Pramstaller, plaintiff alleges that Pramstaller was the Director of the Bureau of Health Services for the MDOC and, consequently, responsible for the policies, practices and customs of the MDOC.  (Complaint, ¶ 3).  Plaintiff also alleges that he filed a grievance against Pramstaller, Khan and CMS because of Khan's threats of retaliation (Complaint, ¶ 15) and hired an attorney to submit his complaints regarding Khan to Pramstaller. (Complaint, ¶ 16)  Plaintiff further alleges that Pramstaller conspired with the other defendants (Complaint, ¶ 40) and that, given his position, Pramstaller followed the unconstitutional customs and policies that lead to the inadequate medical treatment (Complaint, ¶¶ 43-45).

With respect to defendant Hynes, plaintiff alleges that Hynes was a nurse at TCF during the relevant time period.  (Complaint, ¶ 5)  According to plaintiff, after he filed a grievance against Pramstaller, Khan and CMS, Hynes voiced her dislike of prisoners filing complaints. (Complaint, ¶ 16)  Plaintiff also alleges that he submitted a written complaint to Hynes regarding Khan exposing plaintiff to fish, but that Hynes ignored the complaint.  (Complaint, ¶ 17) Plaintiff further alleges that, after he filed a grievance against Khan and Hynes in February of 2007, Hynes improperly reviewed  that grievance and continued to do nothing about Khan's actions.  (Complaint, ¶¶ 18-19)  According to plaintiff, Hynes was a supervisor at TCF and, in part, responsible for the customs and policies that lead to the inadequate medical treatment. (Complaint, ¶¶ 38-47)

With respect to defendant CMS, plaintiff first alleges that CMS followed a policy and custom whereby it denied plaintiff treatment for myositis and a hearing aid.  (Complaint, ¶15) Plaintiff also alleges that CMS practiced and permitted policies and customs that resulted in the

violations of plaintiff's constitutional rights, failed to train and supervise employees to prevent the alleged constitutional violations, and failed to meet its contractual obligations.  (Complaint, ¶¶ 38-47)

### B. Motion Before The Court

On November 18, 2010, defendants CMS and Khan filed a motion for summary judgment (D/E #58).  In that motion, those defendants argue that, with respect to plaintiff's retaliation claim, they are entitled to summary judgment because there is no evidence that they took an adverse action against plaintiff.  With respect to plaintiff's deliberate indifference claim, defendants argue that they are entitled to summary judgment because no genuine issue of material fact exists with respect to either element of the claim against Khan and because CMS was not personally involved in the alleged constitutional violation.  Defendants also argue that plaintiff failed to state a claim for supervisory liability or gross negligence.

On December 8, 2010, plaintiff filed a response in opposition to defendants CMS and Khan's motion (D/E #72).  In that response, plaintiff argues that his medical records are replete with objective evidence upon which a reasonable jury could conclude that his fish allergy and other medical conditions are serious medical needs, that defendants Khan and CMS were subjectively aware of those needs, and that Khan intentionally exposed plaintiff to fish while being fully aware of the danger to plaintiff.  Plaintiff also argues that CMS has a custom and policy of deliberately indifferent medical care, as displayed by the deaths of several prisoners. Plaintiff further argues that there is conclusive evidence of the retaliation against him.

According to plaintiff, there is also sufficient evidence demonstrating Khan and CMS' habitual gross negligence.

On January 10, 2011, defendants CMS and Khan filed a reply to plaintiff's response (D/E #78).  In that reply, defendants reiterate their earlier arguments while also noting that plaintiff had improperly raised arguments and claims for the first time in his response.

### III. Standard of Review

Defendants CMS and Khan move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), which states that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575,

1592 (1968)).

**IV. Discussion**

      As discussed above, defendants CMS and Khan argue that they are entitled to summary

judgment on all of plaintiff's claims against them.  With respect to plaintiff's deliberate

indifference claim, those defendants argue that no genuine issue of material fact exists with

respect to either element of the claim against Khan and that CMS was not personally involved in

the alleged constitutional violation.  With respect to plaintiff's retaliation claim, CMS and Khan

argue that  there is no evidence that they took an adverse action against plaintiff.  Defendants

also argue that plaintiff failed to state a claim for supervisory liability or gross negligence.  For

the reasons discussed below, this court finds that both defendants Khan and CMS are entitled to

summary judgment on all claims against them.

      **A. Defendant Khan**

      **1. Retaliation Claim**

      Plaintiff alleges that Khan unlawfully retaliated against him for filing grievances when

Khan deliberately and intentionally exposed plaintiff to fish, even though Khan knew that

plaintiff had a severe allergy to fish.  (Complaint, ¶¶ 15-19)  Those facts contain the essential

elements of a First Amendment retaliation claim.  To establish such a claim, a prisoner must

prove that: "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" Hill v. Lappin, 630 F.3d 468, 472 (6th Cir. 2010) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

Here, Khan only argues that no genuine dispute exists with respect to the adverse action element of plaintiff's retaliation claim. An adverse action is one that is "*capable* of deterring a person of ordinary firmness" from exercising the constitutional right in question. Bell v. Johnson, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original) (citation and internal quotation marks omitted). However, actual deterrence need not be shown and even "the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." Hill, 630 F.3d at 472 (citation omitted). In discussing the level of action or threat necessary to deter a person of ordinary firmness, the Sixth Circuit has emphasized that this element is not overly difficult for the plaintiff to meet:

> We emphasize that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions....

Thaddeus-X, 175 F.3d at 398. Additionally, "because 'there is no justification for harassing people for exercising their constitutional rights,' the deterrent effect of the adverse action need not be great in order to be actionable." Hill, 630 F.3d at 473 (quoting Thaddeus-X, 175 F.3d at 397 (citation and internal quotation marks omitted)).

Given the record in this case, there is no genuine dispute as to the adverse action element of plaintiff's retaliation claim and Khan is entitled to judgment as a matter of law on that claim. While plaintiff alleges that, after he filed a grievance against Khan, Khan retaliated against plaintiff by deliberately and intentionally exposing plaintiff to fish, there is no evidence to support such an allegation. Instead, the evidence in the record demonstrates that, while plaintiff did report having an allergic reaction to the smell of fish when being evaluated by Khan on October 16, 2006 (Medical Records, p. 934)[1], Khan was not responsible for scheduling plaintiff to be seen in health services on that date, or on any other date, as appointments are scheduled by the MDOC staff (Declaration of Zakiuddin Khan, ¶¶ 13, 17)[2]. Khan also specifically stated in his Declaration that he did not have plaintiff called out to health services on October 16, 2006, that he was not informed or aware of when fish was being prepared or served by food services, and that he was not aware that fish was being prepared by food services on October 16, 2006. (Declaration of Zakiuddin Khan, ¶¶ 13-15, 17). Moreover, after plaintiff reported an allergic reaction, Khan promptly treated it. (Declaration of Zakiuddin Khan, ¶ 16; attached as Exhibit B to Defendants' Motion). Plaintiff presents no evidence contradicting that evidence and, instead, asserts for the first time that the alleged retaliation actually occurred on February 22, 2007. However, the exhibits to plaintiff's complaint make clear that the alleged retaliation occurred on October 16, 2006 as plaintiff's letters and grievance all reference that date. (Letters, attached as Exhibit 2 and 3 to Plaintiff's Complaint; Grievance TCF 07-02-0144-12D, attached as Exhibit 4

---

[1]Portions of Plaintiff's Medical Records are attached as Exhibit A to Defendants' Motion.

[2]Khan's Declaration is attached as Exhibit B to Defendants' Motion.

to Complaint)  Plaintiff provides no evidence contradicting Khan's evidence that, on October 16, 2006, Khan evaluated plaintiff without knowledge of whether food services was preparing fish and that Khan did not schedule or call Plaintiff out to be seen.  Furthermore, as argued by defendants, plaintiff fails to point to any evidence suggesting that he was examined or treated by Khan on February 22, 2007.  Given the evidence that is in the record, it is clear that no adverse action occurred as alleged by plaintiff.  Accordingly, Khan is entitled to summary judgment on plaintiff's retaliation claim.[3]

**2. Deliberate Indifference Claim**

Plaintiff alleges that Khan violated the United States Constitution by providing inadequate medical care.  Elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's obligation to provide medical care for those whom it is punishing by incarceration.  Estelle v. Gamble, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment.  See Estelle, 429 U.S. at 103-104.  To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs.  Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

---

[3]Plaintiff also argues in his response that Khan retaliated against plaintiff by having him transferred from TCF.  However, there is no such allegation in his complaint and plaintiff cannot make such an argument now.  Moreover, this court would also note that plaintiff fails to provide any evidence that Khan was involved in any transfer.

To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  <u>Wilson</u>, 501 U.S. at 300.  The objective element is satisfied by a showing that plaintiff had a serious medical need.  <u>Wilson</u>, 501 U.S. at 297.  To satisfy the subjective component of the adequate medical care test, a plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."  <u>Comstock v. McCrary</u>, 273 F.3d 693, 703 (6th Cir. 2001).

Here, plaintiff appears to make two separate claims alleging unconstitutionally inadequate medical care against Khan.  First, plaintiff alleges that Khan was deliberately indifferent to plaintiff's serious medical needs during the treatment for myositis when Khan improperly, and against another doctor's instruction, stopped plaintiff's prednisone medication without tapering it off.  Second, plaintiff alleges that a constitutional violation occurred when Khan intentionally exposed plaintiff to fish, even though Khan knew that plaintiff had a severe allergy to fish.  Each of those claims will be addressed in turn and, for the reasons discussed below, this court find that, while plaintiff may have had serious medical needs, no genuine dispute exists with respect to the subjective element of his Eighth Amendment claims against Khan and Khan is entitled to summary judgment on those claims.

**a. Myositis**

As discussed above, plaintiff's claims regarding his treatment for myositis allege that Khan improperly, and against another doctor's instruction, stopped plaintiff's prednisone medication without tapering it off.  Defendants argue that summary judgment should be entered in favor of Khan because there is no evidence that Khan was subjectively aware of a substantial

-10-

risk to plaintiff or that Khan acted with deliberate indifference to that risk.  Plaintiff argues in response that Khan intentionally ignored plaintiff's symptoms and his prescribed medical treatment when stopping the medication, and that Khan's actions therefore constituted deliberate indifference to plaintiff's serious medical needs.

As discussed above, to satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."  Comstock, 273 F.3d at 703.  Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

Here, no genuine dispute exists with respect to whether Khan acted with deliberate indifference to plaintiff's serious medical needs when he stopped plaintiff's prednisone medication without tapering it off.

-11-

Plaintiff's prior treating physician had tried to take plaintiff off prednisone.  For example, on October 20, 2003, Nurse Theresa Murphy completed a Nurse Protocol form after plaintiff suffered anaphylactic shock and, as part of the form, Murphy indicated that a Dr. Royster was attempting to taper down plaintiff's prescription for prednisone.  (Nurse Protocol - Anaphylactic Shock, October 20, 2003; pp. 36-37 of Exhibit A to Plaintiff's Response)  Similarly, on February 23, 2004, Dr. Royster completed a SOAP Note Summary with respect to plaintiff's prednisone prescription.  (SOAP Note Summary, February 23, 2004; p. 35-B of Exhibit A to Plaintiff's Response)  In that summary, Dr. Royster noted that he had tried to wean plaintiff off prednisone and had gotten plaintiff below a dose of 10 mg daily, but that plaintiff was now complaining of profound fatigue, blurred vision and muscle pain.  Dr. Royster also noted that he had discussed with plaintiff the short-term benefits of the medication as well as its negative, long-term risks. Dr. Royster further stated that, while he was against the continuing use of prednisone, plaintiff needed to be the one to make the decision as plaintiff would be the one to suffer the long-term effects.  After plaintiff indicated his understanding and desire to continue with the medication, Dr. Royster increased the daily dosage back to 10 mg.[4]

It is undisputed that Khan, as plaintiff's subsequent treating physician, did discontinue the prednisone.  In his Declaration, Khan stated that, by December 21, 2005, plaintiff's sed rate was normal and that rate indicated that any inflammation related to plaintiff's myositis was controlled.  (Declaration of Zakiuddin A. Khan, ¶ 6)  Khan also stated that, in light of that lack

---

[4]Dr. Royster also indicated that the attempt to take plaintiff off prednisone was not the first time Dr. Royster had tried to discontinue plaintiff's prescription of prednisone.

of inflammation and sed rate, plaintiff did not require prednisone and Khan ordered it

discontinued.  (Declaration of Zakiuddin A. Khan, ¶¶ 7-8)  Khan further stated that, in his

medical judgment, a 10 mg dose of prednisone, such as the daily dose plaintiff was taking, can

be stopped immediately and does not require tapering off.  (Declaration of Zakiuddin A. Khan,

¶¶  9-10)

      Plaintiff's medical records confirm that his sed rate was normal on December 21, 2005,

and that it continued to be normal after the prednisone was discontinued.  (Medical Records, pp.

797, 799, 801, 811)  Moreover, as argued by defendants, plaintiff does not allege in his

complaint that he suffered any injury from the discontinuation of prednisone and he never

complained to health services about any negative effects, despite the fact that he sent at least six

kites to health care regarding other issues after the prednisone was stopped.  (Medical Records,

pp. 662, 670, 673, 678, 681, 701)

      Given the record in this case, no genuine dispute exists with respect to the subjective

element of plaintiff's claim that Khan was deliberately indifferent to plaintiff's myositis by

immediately discontinuing the prednisone and not tapering it off.  Previous doctors had indicated

a desire to take plaintiff off prednisone and Khan's Declaration clearly states why, in his medical

judgment, the prednisone was unnecessary and did not need to be tapered off.  Similarly,

plaintiff's objective tests, both before and after the prednisone was discontinued, confirm that

plaintiff's myositis was under control.  Additionally, plaintiff failed to send any complaints to

health care or allege any injury that would even suggest that Khan had erred.  Plaintiff clearly

wanted to stay on prednisone, but a difference of opinion regarding medical treatment is

-13-

sufficient to support a deliberate indifference claim.  Westlake, 537 F.2d at 860 n. 5.  At most, that is what plaintiff can show and Khan is therefore entitled to summary judgment.

### b. Fish Allergy

With respect to plaintiff's fish allergy, Khan argues that no genuine dispute as to any material fact exists in either element of plaintiff's claim.  Plaintiff argues in his response that the evidence clearly establishes that he has a severe allergy to fish and that Khan was deliberately indifferent to that serious medical need when Khan intentionally exposed him to the smell of fish.  This court finds that, while there is a genuine dispute as to the objective element of plaintiff's claim, plaintiff has failed to demonstrate a genuine dispute as to the subjective element of his claim and Khan is therefore entitled to summary judgment on that basis.

The objective element of plaintiff's claim is satisfied by a showing that plaintiff had a serious medical need.  Wilson, 501 U.S. at 297.  "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test."  Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'"  Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).

-14-

Here, defendants argue that plaintiff did not have a serious medical need because any fish allergy he has is undiagnosed and plaintiff has twice refused to undergo allergy testing (Medical Records, pp. 886, 967).  According to Khan, because the alleged fish allergy is undiagnosed, it cannot be a serious medical need for purposes of an Eighth Amendment claim.  However, given the entire record in this case, it appears that a genuine dispute exists as to whether plaintiff's alleged fish allergy constituted a serious medical need.  Plaintiff's medical records expressly note that plaintiff had a fish allergy prior to the time period discussed in the complaint.  (Medical Records, pp. 886, 960, 967)  Similarly, Khan himself has treated plaintiff for a fish allergy.  For example, on January 23, 2006, Khan ordered that plaintiff should receive Benadryl 50 mg three times per day, as needed, for allergies.  (Medical Records, p. 879)  A month later, Khan signed a order to administer Benadryl to plaintiff for allergic reactions to fish and to keep Benadryl in health care.  (Medical Records, p. 875)  Plaintiff's medical records also demonstrate treatment for a fish allergy on September 28, 2006 and October 3, 2006.  (Medical Records, pp. 682-683, 945-946)  Moreover, as discussed above, when Khan examined plaintiff on October 16, 2006, plaintiff complained of an allergic reaction to the smell of fish and Khan administered oral Benadryl and a Benedryl injection.  (Medical Records, pp. 871, 934, 945)  Likewise, Khan treated plaintiff for the same condition and in the same way on January 22, 2007.  (Medical Records, pp. 666, 866)  Given that evidence regarding the existence and treatment of plaintiff's fish allergy, including treatment by Khan, a rational trier of fact could find that plaintiff had a fish allergy and that the allergy was a serious medical need.  Accordingly, Khan is not entitled to summary judgment on that basis.

-15-

In the subjective element of his claim, plaintiff must show that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock, 273 F.3d at 703. As discussed above, deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. Gibson, 963 F.2d at 853. Additionally, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgment. Westlake 537 F.2d at 860 n. 5. Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

Here, the evidence in the record establishes that there is no genuine dispute as to the subjective element of plaintiff's claim that Khan was deliberately indifferent to his serious medical needs by intentionally exposing him to fish. As discussed above, Khan did not schedule plaintiff's appointment on October 16, 2006, did not call plaintiff to health services on that day, and did not know fish was being prepared and served that day. Moreover, after plaintiff started complaining of an allergic reaction to the smell of fish, Khan promptly and successfully treated plaintiff. Given that treatment, and the lack of any evidence suggesting that Khan intentionally exposed plaintiff to the smell of fish, plaintiff has failed to demonstrate a genuine dispute as to the subjective element of plaintiff's claim that Khan was deliberately indifferent to his serious medical needs by intentionally exposing him to fish. Consequently, Khan is entitled to summary judgment on that claim.

### 3. Supervisory Liability Claim

-16-

In Count III of his complaint, plaintiff makes the a claim of "supervisory liability" against Khan. However, assuming *arguendo* that Khan was even a supervisor at TCF, Khan is entitled to summary judgment on that claim. To succeed under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation and a respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983. See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted).

In this case, there is no evidence that Khan implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of others. Plaintiff makes general allegations that defendants conspired together, but there is no evidence of such a conspiracy and the only specific allegations plaintiff made relate to other defendants refusing to remedy Khan's actions. Plaintiff's supervisory liability claim against Khan is clearly insufficient and unsupported by the record. Accordingly, Khan should be granted summary judgment on that claim.

### 4. Gross Negligence

In Count IV of the complaint, plaintiff alleges gross negligence on the part of Khan during Khan's treatment of plaintiff. Defendants argue that, because plaintiff's gross negligence

-17-

claim is actually just a restatement of plaintiff's deliberate indifference and retaliation claims, they are entitled to summary judgment on the gross negligence claims for the same reasons discussed above.  Plaintiff argues in response that he has stated a valid claim and that his claim is supported by the record.  This court finds that no genuine issue of material fact exists with respect to plaintiff's gross negligence claim against Khan and Khan is therefore entitled to summary judgment.

"Gross negligence" has been defined in many contexts as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Xu v. Gay, 257 Mich. App. 263, 269, 668 N.W.2d 166 (2003); see M.C.L. § 691.1407(7)(a) (Governmental Immunity) and M.C.L. § 324.81131(11) (Natural Resources and Environmental Protection Act).  While that is a lesser standard than what is required to establish deliberate indifference, defendants would still be entitled to summary judgment on the gross negligence claims for the same reasons they are entitled to summary judgment on plaintiff's Eighth Amendment claims.  As discussed above, the evidence in this case demonstrates that Khan never intentionally exposed plaintiff to fish and that Khan properly exercised his medical judgment when discontinuing the prednisone.  Given that evidence, no genuine dispute exists at to any material fact in plaintiff's gross negligence claims and defendants are entitled to judgment as a matter of law.

**B. CMS**

Defendant CMS seeks summary judgment in its favor on the basis that plaintiff cannot show that it maintained an unconstitutional policy, practice or procedure that was the proximate cause of any injury to plaintiff.  As discussed above, plaintiff specifically alleges that CMS

-18-

followed a policy or custom whereby it denied plaintiff treatment for myositis and a hearing aid. (Complaint, ¶15)  Plaintiff also alleges that CMS practiced and permitted policies and customs that resulted in the violations of plaintiff's constitutional rights, failed to train and supervise employees to prevent the alleged constitutional violations, and failed to meet its contractual obligations.  (Complaint, ¶¶ 38-47)

In <u>Monell v. Dep't. of Social Services of New York City</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that Section 1983 liability may not be imposed upon a municipal corporation solely on a theory of respondeat superior.  "Instead it is when execution of a government's policy ... inflicts the injury that the government as an entity is responsible under Section 1983." <u>Monell</u>, 436 U.S. at 694.  It is unnecessary that the offending custom or practice be formally adopted and promulgated, as an "act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Board of County Commissioners v. Brown</u>, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  The <u>Monell</u> doctrine applies with equal force to private corporations acting under color of state law. <u>Street v. Corrections Corporation of America</u>, 102 F.3d 810, 817-18 (6th Cir.1996).

Here, there is no evidence CMS was connected to a policy, practice, or custom to interfere with plaintiff's treatment for myositis.  While plaintiff generally alleges that CMS followed a policy or custom whereby it denied plaintiff treatment for myositis, the only specific allegations plaintiff makes regarding the treatment for myositis involve Khan discontinuing

plaintiff's prednisone medication without tapering it off.  However, as discussed above, Khan's

actions did not constitute a violation of plaintiff's constitutional rights.  Therefore, regardless of

CMS' policies, CMS is entitled to summary judgment on plaintiff's claims regarding his

myositis.

Similarly, CMS is also entitled to summary judgment with respect to plaintiff's claims

regarding a hearing aid.  Plaintiff failed to provide any details regarding that claim in his

complaint, but he does state in his response that he was diagnosed with a hearing deficit in

October of 2000, prescribed a hearing aid, and then denied a hearing aid by CMS.  In support of

those claims, plaintiff provides a CMS form authorizing an Audiology Consult (CMS

Authorization; p.41 of Exhibit A to Plaintiff's Response) and a CMS form denying his request

for a hearing aid (Pended or Denied Form; p. 42 of Exhibit A to Plaintiff's Response).  That

denial occurred on January 2, 2001 and, in it, a Dr. Hutchinson stated that plaintiff's hearing loss

did not meet the criteria for a hearing aid.  (Pended or Denied Form; p. 42 of Exhibit A to

Plaintiff's Response)

As argued by defendants, however, plaintiff's evidence only demonstrates that plaintiff

was denied a hearing aid nine years before filing this action.  As such, plaintiff's claim is clearly

outside the statute of limitations.[5]  Section 1983 does not contain its own statute of limitations,

courts must look to state law to determine the relevant limitations period.  Roberson v.

---

[5]Defendants did not raise a statute of limitations argument in their motion for summary
judgment, but that was only because plaintiff did not provide any details in his complaint and did
not rely on the 2001 denial until filing his response.

-20-

Tennessee, 399 F.3d 792, 794 (6th Cir. 2005).  The Sixth Circuit has held that "the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims."  Wolfe v. Perry, 412 F.3d 707, 713-714 (6th Cir. 2005) (citing Mich. Comp. Laws Ann. § 600.5805(10); Carroll v. Wilkerson, 782 F.2d 44, 44 (6th Cir. 1986).

In determining when the limitations period began, courts must refer to federal law. Roberson, 399 F.3d at 794.  The Sixth Circuit has held that, under federal law, the statute of limitations begins to run "'when the plaintiff knows or has reason to know of the injury which is the basis of [her] action.  A plaintiff has reason to know of [her] injury when [she] should have discovered it through the exercise of reasonable diligence.'"  Roberson, 399 F.3d at 794 (quoting, Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984).  Pursuant to Fed. R. Civ. P. 6(a)(1)(A), the court must "exclude the day of the event that triggers the period" when calculating the statute of limitations.

Given that plaintiff's request for a hearing aid was denied in 2001, any claim based on that denial arose in 2001 and is now clearly barred by the three-year statute of limitations for § 1983 claims.  Therefore, CMS is entitled to summary judgment on that claim.

**V. Conclusion**

For the reasons discussed above, this court recommends that defendants CMS and Khan's motion for summary judgment (D/E #58) be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: March 18, 2011

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and Carlo
Vartinelli via the Court's ECF System and/or U. S. Mail on March 18, 2011.

s/J. Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan